I'm Leonard Morales from El Paso, Western District of Texas. This appeal is a single-issue matter revolving around the application of departures and sentencing. The court directed me to brief or discuss whether the departures in Chapter 5 of the sentencing guidelines apply after a single offense level is calculated pursuant to the grouping rules of Chapter 3, Part D. I think the answer to that question is yes, it is. 3D5.1, if I may direct the court to that part of the guidelines, directs us to you to find the combination, the offense combination, and then refer to Chapter 5 for departures. This follows along the lines of our case law after Booker, post Booker, where first the court finds aggravating or mitigating circumstances, if those exist, and then apply those after the guideline sentences. Typically, the way a guideline sentence is calculated is first we find the base offense level, then apply things such as safety valve, role, acceptance, other aggravating factors, and then we move on to departures or variances. Where this case deviates somewhat is that this was a multiple offense grouping case. You had a possession or importation of marijuana case and also an alien smuggling case that were found not exactly in the same transaction or occurrence, but they were in along the same veins. If I might give the court some background, Ms. Vidalis was stopped. I would suggest the factual background, you don't have much time, and I find the grouping rules very complicated. So there was an earlier appeal of the harboring sentence. There was, Your Honor. And that was dismissed, I take it, because there was an appeal waiver provision because you actually had a guilty plea where you got negotiated the downward I did discuss that with my client, with Ms. Vidalis, and she did. Right, but there was an appeal of that case, separately numbered, where there might have been a departure downward, and it was dismissed. So why isn't this a second bite in an apple in a drug case where there was no guilty plea and no departure? The argument is because they were grouped? No, Your Honor. Actually, that's where I'm a little confused myself. I filed both of these appeals under each individual case number. This is a little unusual, as it was indicted separately, although the incidents... Indicted separately, pled separately. Well, pled, well... Pled separately, you have two different appeal numbers. That's correct. And you've got... So what case have you ever found where grouping occurs, but there doesn't result one final total sentence with one sentencing appeal? Have you found one? I have not, Judge. I have not. And that's where this becomes even a little more complicated and confusing. Well, I'm not sure it's complicated. What if it's just wrong and both parties are wrong? Now, tell me I can be wrong instead of that. It's not likely I'm right, but maybe the problem here is the grouping shouldn't apply. I thought the grouping chapter said you end up with one total sentence. It does, right? I agree with that, Judge. I do, and that's sort of what happened here. However, the two cases that brought us here are separate cases with their own case number, and they were brought forward in that way. And then probation says, let's group them, and no one objects. Right. But you agree they're not related, right? Different victims, different... Not precisely, Your Honor. The defendant here was working for the same criminal cartel. She was working for them. She imported an amount of marijuana. Your client? Yes, Your Honor. So you're acknowledging, you're telling us, because I don't think that's in your client's interest, but you're saying that they were related, so they should have been grouped as related. Yes, Your Honor. I mean, it's not my goal here to pull the wool over anybody's eyes. Right, but there's no district court finding of relatedness. Yes, exactly. There has to be a finding, but you're conceding that it is, Judge. Okay. These were all sort of not completely independent incidents. They were related. Okay. They all came up the same day, the same day that Ms. Vidal was... All right, so then they should be grouped. Then the error might have been that somehow they get divided again for two different appeals, but you didn't object to that, so we'd be reviewing for plain error, right? No, I didn't object to that, Your Honor, and that's where... And I'm just talking quickly, but if we're It looks like the government's footnotes say there were so many errors done it would be worse for your client if we order resentencing. What's your answer to that? Have you thought through that if we ordered a resentencing, they've put in footnotes multiple errors that ended up in your client's benefit? Well, Judge, the court asked counsel to ask me to brief the issue. No, I know, but you're pushing, you're asking for a resentencing. Yes, Your Honor. And your client's out of jail already. Yes, Your Honor. And a resentencing could end up in more time. I don't believe so, Your Honor. Okay. I think that the way the sentence was calculated was potentially incorrect. Frankly, I don't know the answer to this. What could the district court do to help you when it goes back? Well, there's a couple of things, Your Honor. One of them is to either recalculate the guideline sentence and apply the fast track points to the initial sentence as we asked in the original case, where I think— The harboring. Yes, Your Honor. The harboring case, which came first. That was indicted first. But another panel of ours has dismissed the appeal of that. Yes, Your Honor. Yes, it did. Can we rule against a prior panel? I don't know that, Judge. I don't know. You've got to help us with some answers. I understand, Your Honor. The issue that we had here was whether or not the guidelines were applied correctly or not. That harboring case has been dismissed. But we still have this issue with regard to the larger drug case and whether or not those prior points that were applied under the plea agreement should apply to the total sentence, which was the sentence that controlled at the sentencing, Judge. This was that drug case that sort of swallowed up the harboring case. It didn't really, though. They each got 27 months. So, let's say you win on the sentence in front of us, the drug sentence. You've still got a J&C that says 27 to be run concurrently. I don't know that that's correct, Judge. I think the harboring case, actually, the offense level there was much lower. But the court—I've looked at the judgment and conviction on number 1, 818, 27 months to run concurrently. They each have final J&Cs. You agree with me, right? I agree with that, Judge, and I think that was incorrect as well. In looking at the sentencing, the Judge Guadarrama applied all of these points to the harboring case. He said, well, I'm going to grant your plea agreement points, your fast-track points, and apply them to the harboring case. That reduced the level 15 down to a level 11. And that was how it was supposed to apply. The judgment in the end, I'm not sure how that ended up being a level 20, 27, but I think that was incorrect. Were you sentencing counsel? Yes, Your Honor, I was. And I ask because I dislike it when district courts go off the record. And I noticed there were three different sentencing hearings. Yes, Your Honor. At the end of the second, there's, oh, we'll go off the record. Then at the beginning of the third and final, all the parties in the district court say, and we've discussed this off the record. I thought, oh, well, maybe they consolidated the cases then. Is that what happened? Not exactly, Your Honor. I was never quite in agreement with the way that Judge Guadarrama had, his reasoning or rationale behind all of this. Obviously, I had agreed with the way U.S. probation scored it. But as an officer of the court, when you went off the record, did you discuss this procedural item? We did. We did, Your Honor. Well, then tell us, inform us what was said off the record. Well, what happened, Judge, is the Judge Guadarrama asked the probation department for some clarification on why they felt the scheme should have gone this way. In other words, why the last four points should have applied as a departure after the determination of the combined offense level. The probation department said, well, we believe that's how the guidelines apply. This is what we think it says. According to all of our mandates and agreements and whatnot, they believe that that was correctly scored. So Judge Guadarrama asked me my position on that. I said, well, obviously, Judge, I'm going to ask for whatever gets my client less time. And I believe that that is correct. I also gave him my rationale why I believe that was correct. Judge Guadarrama then just told us, this is what I mean by us. Myself, the U.S. attorney, the U.S. probation officer assigned to the case told us, well, I don't think that's a correct application. I don't think that's what the guidelines are going for. Very much what he said drained us. It wasn't too far afloat. He reiterated what he, okay. Pretty much, Judge. There were no surprises. There was nothing happening. There were no under-the-table deals or anything like that. It was pretty straightforward. So what would you want us to rule? Give us some legal analysis. You're saying what? Well, Judge, what I'd like to see is I'd like to see some guidance because I think there's a gap. Guidance? You've got to give us the guidance. What's the legal error here? Judge, I believe the legal error is in the application of departures. Where do we apply departures after cases are grouped? Because they're obviously, we're talking about different and they don't always have all the same facts and circumstances. And in this instance, you have something that clearly illustrates this. We had a plea agreement in the harboring case that provided for a substantial departure. Then you had a concurrent drug case that had no such departures. But when the guidelines call for the cases to be grouped and they are in fact grouped and you are actually adding aggravating points, moving up the scale because of these two offenses, then I think that all of these things should apply and they should apply in the way the guidelines work. And in this instance, the guidelines call for the departures. That assumes one, the guidelines call for them to be grouped, which turns on relatedness. And I don't see a finding of relatedness, but you're telling us today they are. But it also turns on the process of grouping. And I thought at the end of Chapter 3, once you've grouped, you end up with one sentence that then can be appealed and everyone can assess the grouping. I, I, I, I don't think so, Judge. I think that what we do is we group the offenses, you apply the grouping, the grouping, and then you get two different sentences and appeals. No, you don't judge. I think you get one, but then there's still, there's still after the, after that total offense level, the group level is determined. Then you should apply any departures or variances that. To one sentence? To the one sentence, yes. That's, that's my position, Judge, that you should apply it to the one sentence. Because we're talking about a total offense. We're talking about all the defendant, the defendant's total conduct. And, and even when we look at the grouping, that's what the guidelines are asking us to do. That's why you get extra points for units depending on the severity of the, of the offenses. If you're right that the process should have ended up in one sentence. Yes, Judge. Didn't object to that. No, you're wrong. I didn't object to the single sentence. I thought that was fair under the circumstances. This was all total conduct. She was engaged in these things the whole time. Right. So I didn't think any of that was unfair, Judge. Yeah. What about the government's brief saying what you're essentially asking for is a rule that says that if you commit more crime, you get less time? I don't think that's the case, Judge. I think that, that in this instance, the government made an offer when that initial harboring case came up. They made an offer of a plea agreement which included a fast track. And I think it would be remiss of me to, to turn that down or to say, no, you know what, let's wait and see what this drug case does. No, it's, it's part of my job to try and get as many concessions as possible from the government that might help my client at sentencing. I think it would be remiss of me to, to turn that down or to turn it away. You don't look a gift horse in the mouth, Judge, in other words. But the, the, in, in this instance, it, it came up the way it came up. I don't know why the drug case took much longer to, to, to file. I, I believe, if I remember correctly, it had something to do with the delay in the labs. And that's why the indictment on, on that came up later, although it was just a marijuana case. It wasn't terribly complicated, Judge. You agree that the sentence that should have been imposed was the one recommended by probation? Yes, Your Honor. That's, that's what I'm saying. Well, let's say we agree with you and we, but what, we, we're not giving you any relief if we send it back because he's already served his sentence. Yes, I guess for, for, for our purposes, Judge, the, the, the issue then is, well, guidance for the future. What do we do if this situation were to ever come up again? I don't know that it ever will. This is a very unique type of situation. Sounds like an advisory opinion to me. Very well, maybe, Judge. Wouldn't it have some impact on the supervised release term? Is, is there any other? I don't believe so, Judge. The, on the supervised release term, I think, Ms., for, first of all, Ms. Vidalis is already about halfway through her supervised release term. I believe she's doing well. I haven't heard of any violations or any issues. On the other hand, I think that's independent of the, of the sentence. What about in the event of a revocation, which, of course, we hope doesn't happen, and she's got a little ways to go, wouldn't this original sentence have some impact on a calculation of a revocation term? I think only with regard to what Ms. Vidalis' criminal history level was, Judge, which, which would not change in, in, in this instance. But what about, I mean, these are important questions. Collateral consequences can still, what about in the future? She commits another crime. This one would be calculated based on a 27-month sentence. But if you were to prevail, she may not have served more than a year in jail. I, I believe that's correct. Wouldn't that have some collateral consequences, or you're saying no? I, I believe that, that it probably would have some collateral consequences, consequences, Judge, but it depends, obviously, on what might happen in the future. I appreciate your candor, but if you're asking us for guidance in a case that maybe should have been consolidated, and here you didn't file a reply brief, we don't have much material to You have rebuttal time. Thank you, Counselor. Thank you, Your Honor. Uh, this is, uh, Mr., is it Reichter or Richter? Richter. Richter. Here I am. May it please the Court. As the Court has noted, this appeal is about the sentence for drug trafficking, and Well, no, that isn't what we've noticed. I mean, the government didn't object to grouping. That's right, and let me see if I can answer your question about how this ended up in the procedural posture that it did. The guidelines in Chapter 3, Part D, in the introduction section, and in 3D1.1A1, provide that when there are, uh, different, uh, cases that are consolidated for sentencing, that they, that Well, not, let's assume not, not consolidated. That's the wrong word. That's right, Your Honor. Imposed at the same time. When they're imposed in a single hearing, uh, that Multiple sentences imposed at the same hearing, you can group if the offenses are related. Well, uh, and, and let me, uh, go back to the term grouping here, uh, because you, uh, the, with the way the guidelines use the term grouping is to say that, um, that related counts are grouped together, for instance, by drug quantity or so forth.  But what you're talking about, I think, and when you use the word grouping with Mr. Morales, was actually what the guidelines call the adjustment for multiple counts. So you had a group at this sentencing. Two groups then, right? Two groups. A group for the, uh, drug trafficking counts from the first case that was indicted, and the drug trafficking was indicted first, and then you had a second group that was for the alien harboring case. Those were put together in a multiple count adjustment. So, when the district court looked at how to apply the departure, which was negotiated for only in, and was, was only available in . . . Before you get to the departure though, so we had, the offense level of twenty-seven is driven by when? Break it down on the offense level. So, okay, so the offense, so the, for, it's not an offense level of twenty-seven. That would be the bottom of the guideline range. The offense level the district court came up with was ultimately eighteen. So, you start with a base offense level of twenty. That's where the district court started. From the drug case? For the drug trafficking. Yeah. Now, as we noted in our brief, that was an error in Ms. Vidal's favor. It should have been twenty-two because of the drug quantity. You add two for maintaining a drug premises, and you might, you subtract two for the safety valve, and you end up with an adjusted offense level of twenty. So, that is for the drug trafficking group. Group one. For the alien harboring group, you end up with an adjusted offense level of fifteen after you depart the, without the departure. Without, okay. That's the adjusted offense level. Now, under the guidelines, you have to do all the calculations and end up with a sentencing range or a guideline sentence first, and then you go to the departures. That's what we know from 1B1.1 and from the court's decision in Peterson. So, what the district court did was correct. It came up with the guideline range. Now, if you want to look at how to apply the departure, then you turn to how do you subtract those four levels? At what stage do you subtract those four levels? Because the way that Congress provided for this departure and the way that the sentencing guidelines implemented is to say that you, you subtract four levels, and the guideline doesn't tell you where to subtract the four levels. But based on Congress's purpose, as this court recognized in Gomez-Herrera, and based on the way that fast-track fees work under the— It's a harboring-specific departure. It's a harboring-specific departure because the guideline requires that it be for an authorized fast-track program, and in this district, there is no authorized fast-track program for drug trafficking. There is for alien harboring. So, what the district court said was, when I subtract these four levels, I should subtract them from the adjusted offense level for alien harboring. Now, if you apply the multiple count adjustment, you look at how those two groups fit together. Okay. And when the district court looked at how those two groups fit together, it said, I'm going to take the higher offense level, which is the one for drug trafficking, and that is going to be where we start, and then we're going to make multiple count adjustments. Now, the district court in Kander, as we point out, made an error in the multiple count adjustment. This is the second error? This is the second error. It's not as much—it's against Ms. Vidalas, but she still ends up ahead because she gained two levels with the first— Well, that's the government telling us that. We have no judicial finding. We're now—you're acknowledging two errors. You claim—okay, keep going. So, we've got two errors that no one's disputing. Right, and in fact, at sentencing, when the district court said, hey, is this a multiple count adjustment, right? He asked that of Mr. Morales, and Mr. Morales said yes, twice, that it was—that was the multiple count adjustment. So, that error was waived, and it was forfeited in the district court and waived on appeal because it wasn't briefed at all in the opening appellate three. So, what we're looking at here, the issue before the court, the only briefed issue is should the district court apply that four-level reduction for the fast-track departure to the total offense level at the very end, or should it apply that to the drug trafficking offense level—I'm sorry, to the alien harboring offense level only because that's what the fast-track P was for. And the district court's application for departure in that way was not an abuse of discretion. It makes— When you're saying that way, when I look at this, it looks like he didn't apply it to either sentence because, in the end, the J&C for the harboring says 27 months. So, but for the error that Mr. Morales has waived by failing to brief it in this court, which is the multiple count adjustment, not the way that the district court calculated the departure. Let me—I know you understand this more better, but did she or didn't she get the departure for the harboring sentence that she negotiated for in the guilty plea? In outcome, did she get any benefit from the departure she negotiated with the government for? She did—ultimately, the guideline range that was produced by the calculation did not give her a benefit. However, she got—she should have gotten a benefit of one level. And so what the district court did when it applied the departure was the correct way to apply the departure. A subsequent error in the guideline calculation that is waived resulted in her not getting the benefit that she should have gotten. That's the second error or the third? That's the—that's the third error that we noted in our brief—in order of our brief. I guess why—why is the government opposing that we—why are you opposing that we don't vacate when you've identified three sentencing errors? And on the—just because they're waived or because you're telling us she benefited? Both. Not only—not only did she waive the error that would result in a different—that would result in a different sentence here by failing to brief it and also failing to raise it in the district court. And this court does not recognize those types of waived errors except in extreme—extraordinary circumstances under your en banc decision in Delgado. So, there's—you already have to jump over the hurdle of her having waived the error that resulted in her not receiving the benefit. It wasn't a result of how the district court applied the fast track departure, which is the issue briefed on appeal. So, not only that, but if you want to start looking for waived errors, then you should look at all the waived errors, and she's going to come out behind in that calculation. And thirdly, these sentences are fully concurrent, and the alien harboring sentence is no longer subject to challenge. The—there was an appeal. This court dismissed the appeal. Well, you moved—you moved—you said you wanted to apply the waiver in that case, which led to the dismissal, right? When we were— The appeal waiver. The government stood on the appeal waiver. But that wasn't the only—the only thing that was discussed in the Andrews brief. This was an Anders brief that was filed in the alien harboring case. So, there's an Anders brief filed where we were consulted about whether we would invoke the waiver. We said, yes, we will probably invoke the waiver in this case, and that makes sense because she came out ahead in the guideline calculation, and so there's no unfairness to Ms. Fidelis. And on top of that, because these sentences are— But it does—I mean, correct me if I'm wrong. It means the government negotiated to give her a departure, and she never got it in outcome. When you look at the J&C for the harboring case, and they are two separate cases, you're insisting that the harboring is over with. It was appealed, and it's been dismissed. She didn't get the departure. She got 27 months. So, that's my concern. Why would the government not want to guarantee someone get the departure they negotiated for her to plead? What we're pressing for here, Your Honor, is to—is that we apply the appeal waiver that applies in the Alien Harboring case. We also negotiated for that, and so the fact that there were errors at sentencing that ultimately would have—were in her favor that resulted in some kind of different sentence, that's what appeal waivers are for, and that's what fast-track plea bargains are for, in fact. The idea of the fast-track plea bargain is that we are going to do this quickly. We are going to get material witnesses. In most cases, that would be the aliens, Alien Harboring— I largely agree with you. To me, it seems like that's a separate appeal. Another panel has looked at it. It's not our problem. If you're right the way you started, this is just looking at the drug sentence. I guess you're right, but can you explain to me, am I wrong when I look at Chapter 3 at the end? When you have either consolidated or multiple sentences imposed at the same time on different counts, different indictments, you should end up with one total sentence. Let me tweak that, Your Honor. You end up with one sentencing range or one guideline sentence. You end up with what the guidelines are recommending. Are you sure of that? Because at the end, it doesn't say you end up with a total guideline range. It says you end up with a total sentence, singular, doesn't it? When you turn to Chapter 4, which is a subsequent part—and I understand what you're saying about—but what the sentence is, Your Honor, is what the court imposes when it That is the sentence. And if there were one, this would have come up as one, and we would be looking at them all. We wouldn't be fractured in appeals. And when I look at the concluding illustrations at the end of Chapter 3, I don't see a single one that ever results in two different sentences. This is— Do you know of any case anywhere where the grouping of counts in separate indictments, where the sentences were imposed at the same time, ended up with two different sentences? Do you know of any case anywhere? I don't, and I would appreciate the opportunity to brief that since that issue was not raised in any of the briefing previously or posed by the court before argument. So if the court would like a supplemental briefing on that, I'd be happy to provide it. But I would urge the court to not just look to the end of Chapter 3 and the illustrations there, which are not meant to illustrate what a sentence is ultimately, or they're not meant to define that. When you go further in the guidelines and further in the guidelines process, you have to get to Chapter 4, Chapter 5, and how the court ultimately imposes a sentence. And the court has to go through the departures, and the court has to go through the process of putting together a guideline range, which can be changed in various ways for minimum or maximum sentences. So Chapter 3 is not the end of the court's analysis in any sentencing equation. The end of the court's analysis is at sentencing when the court calculates the guideline range of the guideline sentence and then selects a sentence from that. So there is not one sentence in this case. There are two separate cases that were never consolidated that were. There was one sentencing hearing held, and the court sentenced for both cases at that sentencing. There is a sentence imposed in the Alien Harboring case and a judgment issued, and that sentence is final. This court has already dismissed the appeal. There was a separate sentence issued in the drug trafficking case, and that sentence is what is before the court today. And I understand the court's frustration with the difficulty of this. And I can tell you, this arises extremely infrequently because the vast, vast majority of fast-track cases are for single-count indictments, usually for illegal reentry. So when we canvassed the case law for something to point to, the best case we can point to is a case like Gomez-Herrera from this court where you talk about how do you apply, what is Congress's intent in this departure, and what do we want to focus on and how this departure should apply. And the guiding principles from that case are that a defendant should not get a benefit if the defendant has not entered into a fast-track plea. And that's what Ms. Fidalis is asking for here. She's asking for a benefit to a drug trafficking sentence that was not eligible for a fast-track plea. What the district court did here was not a perfect calculation, but the way the district court applied the departure was correct. And that's the issue before this court on appeal now. Counsel, I suppose we're not so fortunate to have anything in the record from the district court that would suggest that the sentence would be the same in the event of a guideline calculation error. Nothing that sums up the sentence at that point? Unfortunately, we're not so fortunate. In fact, what the district court said in its sentencing was that it was not imposing a guideline calculation error, that it was trying to use what it believed was the proper way under the guidelines. So I wish I could offer that to you, Your Honor. It was rather the opposite. The court felt like it was adhering to the guideline calculation and fashioning the sentence, that that was the basis of the sentence was the guidelines, not just consulting the guidelines. The guidelines dictated the sentence. Well, the district court still has some discretion around the edges and how it applies a fast-track departure. It didn't have to apply four levels, for instance. But when you turn to which offense level to apply that four levels to, what the district court what did here was not an abuse of discretion. Now, this court doesn't have to say that this is the only way to do it, right? But if we even say it is a way to do it, that could have far-reaching consequences. District judges do like to sentence one defendant on multiple counts same day. It's more efficient. So if we actually say this is how it works, that has—I'm not sure I agree with you that this is just this infinitesimal. And I get worried when there's no case anywhere doing it this way and the guideline illustrations don't describe it this way. I've looked at grouping, what I call grouping, counts on different indictments imposed same day. They always end up in one sentence. They always end up in one appeal that I—and correct me if I'm wrong if you found one. So vast majority are consolidated. The parties agree to consolidate. You end up with one sentence. And that didn't happen here and that's another reason this case is unusual. As I mentioned, I think the fact that this has not come up before is a pretty strong indication that this comes up pretty rarely. So that also supports my educated guess and based on all the statistics I could find— But once the Fifth Circuit writes an opinion, things then come up more because district judge presumably read and think, oh, that's okay. That's how we do it. We can do these more efficiently. Or the government will stop offering fast-track fees and counts in cases involving multiple offenses because if the court says that these have to work out this way, then the government simply will have to consider whether this is an appropriate result and keep in mind that the result that Ms. Vidalis is advocating here would mean that somebody who just committed drug trafficking would end up with a higher sentencing range than Ms. Vidalis did because she committed four crimes and one of those was subject to a fast-track plea. That's a result I don't think the government would count— What is our standard of review? What is the standard of review here? Does it depend on what we think the issue is? It's abusive discretion, Your Honor, and if there was a legal error in the calculation of how the departure applies, then that would be correctable as an abusive discretion. But the overall— Because they did object to the denial of the upper departure. They did. What if the approach is, no, they waived that. That was only available in the harboring case. Why wouldn't that be the way to think of it? Therefore, it is plain error here because the only sentence we're looking at is the drug case where there was never negotiated a departure. Why isn't that the way to look at this? I'm sorry. I'm not sure I followed you because you said that they were appealing the denial of the departure and what they're appealing was not the denial of the departure. It was the way the district court calculated what degree of departure to make under the guidelines. I didn't follow, I'm sorry, the remainder of your question. I am pushing back against both of you. I would have thought, just as you started, this is a drug sentence we're looking at. Another panelist already affirmed the harboring sentence. If this is a drug sentence, there was no plea, they get no departure, end of story. And that's exactly the first thing I wanted to say when I came up here. And I interrupted you. That's how it works. And because of that, because that alien harboring sentence is already final, nothing that happens here, if you were to order resentencing, would make any difference, which is another reason not to reach out and try to reach out for waived calculation errors here. Because that alien harboring sentence is completely final, so no matter what happens in resentencing here, she will have to serve, she's already served her prison term, and she will have to serve the same term of supervised release with the same conditions in the alien harboring case, even if the district court decided at resentencing to adjust something about the drug trafficking sentence. So every error that the three of you have acknowledged happens, they're all harmless? We could rule on that base? They're not technically harmless, Your Honor, because the district court could technically adjust the drug trafficking sentence. As a practical matter, however, it makes no difference to the reality that Ms. Fidalis faces, because she will have to be on that same term of supervised release in the already final sentence in the alien harboring case. The sentences except for the special assessments are completely concurrent. Oh, the special assessments, right. I mean, do you agree, though, that the way the probation officer computed the sentence was wrong? No, the probation officer was wrong, and the district court corrected the probation officer. The district court ultimately got how to apply the departure right. Both the probation officer and the district court made some mistakes that ultimately ended up in Ms. Fidalis' favor in terms of the overall guideline range calculation. And if there are no further questions, I'll simply urge this court to affirm the judgment of the district court. Thank you, counsel. I think the panel has sort of hit the nail on the head here. I wish I knew what the nail was. I'm hoping to illustrate it for you. I think you hit it on the head this morning when you mentioned about district court judges liking sentencing defendants with multiple offenses, multiple counts based on the same day, because it's efficient. I've been in those courts before those district courts. The vast majority of my practice is at district court, so I've seen things not unlike this happen, but not exactly like this. I would agree with the government. It can see that this circumstance, this situation is pretty unique in the way that it arose and how it's traveled through the process. However, I think the issue that we're trying to identify here is, well, what do we do in a situation like this? Again, where we have grouped offenses and you have plea agreements or concessions, agreements made between the defense and the government as to how these things should apply and where do we apply them. I urge the court to think about what are we doing when we're grouping these types of offenses. What we're doing is we're taking into account the total conduct of a criminal defendant. It's not just one case here, one case there. We're looking at everything, and the court is looking at everything. In this instance, I think the court is well-informed to look at and be able to say, well, there's a certain benefit and then doesn't get that benefit. Well, that's not really fair. It's not ethical. It's not equitable under the circumstances. But did the district court here . . . Right. She negotiated for the benefit in the harboring. Yes, Your Honor. Yes, Your Honor. But she didn't get a guilty plea, didn't sign anything in the drug case. She pled straight up. So if this were just a drug sentence, the 27 months is right. I'd have to agree with you, Judge. I think that's correct. If it was just a marijuana case, then that time, that level, the total offense level in that circumstance is exactly as was calculated. But we don't have that. We have a couple of different things going on. So an individual is then grouped. The probation department does the calculations according to what the guidelines direct, and then departures are brought, or variances. And as you pointed out, the district court did not view this as a departure or a variance. It simply said, I believe this is the correct application of the guidelines, which, again, I'm not entirely sure Judge Guadarrama was correct in that instance. Now, he could have simply opted in his discretion to not grant those points based on, again, the total conduct or some other grounds. I mean, those things are available to them. These are not binding plea agreements. But— Again, if you win, I'm a little baffled. She gets pulled back in, resentenced, might go back to jail, which she has finished. I don't believe so, Your Honor. Well, they say there were multiple errors in other points that you haven't raised, therefore waived, that on resentencing would be correctly calculated to work against her. I don't believe so, Your Honor. I don't think that's correct. I think the calculations that we're talking about, one of them has to do with grouping. And if we group it or don't group it, well, I guess that's an issue for the district court to determine whether or not these are related counts. But at least initially, we thought they were. Since they came up at the same time, on the same day, with the same individuals, Ms. Vidal is working for the same people, all of these things, that's why they were related. But I think at the end of the day, Your Honor, what we're looking at is, what do we do in an instance like this where you have a grouping case, let's just call it a generic grouping case, where do we apply departures or variances? Do they apply to each individual offense and then you come up with a total offense level? Or do we do that after you come up with the total group defense level and then apply any departures or variances? That's the question I'm asking, Judge, because I don't have the answer to that. The guidelines seem to say that you apply the departures or variances after the calculation of the group or total offense level. And then you go to variances or departures, well, departures and then variances. That's the position I take today and I think that's the correct application of the guidelines. I think that would inform the district courts of where to place these points if they come up in these things. And yes, I'm fully aware that that may then inform what the U.S. attorneys then do with these agreements and whatnot and how they apply them, when they offer them. But the guidelines are true all, no going in. Your time's up. Thank you very much.